UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SANDRA AND MITCHELL PLETOS,

        Plaintiffs,

                                Case No.: 16-cv-13175
v.                                 Honorable Gershwin A. Drain

MAKOWER ABBATE GUERRA
WEGNER VOLLMER, PLLC, *et al*.,

        Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT [#9], GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS [#13], DENYING MOTION TO SUPPLEMENT COMPLAINT [#39] AND DISMISSING ACTION

## I.     INTRODUCTION

The instant action is the Plaintiffs, Sandra and Mitchell Pletos,' latest attempt to avoid payment of their homeowners' association fees. Dissatisfied with the state courts resolution of Plaintiffs' previous lawsuit against their homeowners association, Plaintiffs filed the instant action claiming that the homeowners association and its counsel committed various violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), the Michigan Regulation of Collection Practices Act, MICH. COMP. LAWS § 445.251 *et seq.* ("MRCPA") and the Racketeer Influenced Corrupt Practices Act, 18 U.S.C. § 1961

*et seq*. ("RICO") by attempting to collect on the state court judgment. Plaintiffs also bring state law claims of abuse of process, criminal enterprise and constructive fraud.

Presently before the Court is the Defendants, John Finkelmann's, and his law firm, Makower Abbate Guerra Wegner Vollmer, PLLC's (the "Makower Defendants") Motion to Dismiss. Also, before the Court is the Defendants,' Roger Papa, Giovan Agazzi, Danny Landa, Kati Azia and Mike Desjardines, who are all Board members of the homeowners association, (the "LWA Defendants") Motion for Summary Judgment. These matters are fully briefed and, upon review of the parties' submissions, the Court concludes that oral argument will not aid in the disposition of this matter. Accordingly, the Court will resolve the pending motions on the submitted briefs. *See* E.D. Mich. L.R. 7.1(f)(2).

Because Plaintiffs have failed to allege viable federal claims and the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims, the Court will grant in part and deny in part the Defendants' present motions and will dismiss the instant action.

## II.    FACTUAL BACKGROUND

Plaintiffs are lot owners in Lake in the Woods, a platted subdivision located in the Township of Shelby, Macomb County, Michigan. By virtue of Plaintiffs' lot ownership, they are members of the Lake in the Woods Association, Inc.

("LWA"), a Michigan nonprofit corporation. The governing documents for the LWA are the: (1) Articles of Incorporation, (2) the Declaration of Easements, Covenants, Conditions and Restrictions for Lake in the Woods Subdivision ("DECCR") and (3) the Bylaws.

Article IV of the DECCR obligates all lot owners of Lake in the Woods to pay annual general assessments and special assessments for capital improvements. Article IV also provides that "[a]ll annual and special assessments, whether general or related to the Lake Lots, together with interest, costs and reasonable attorneys' fees, shall from date of assessment be a charge and a continuing lien upon the Lot against which each such assessment is made." Pg ID 402.

Plaintiffs failed to pay assessments from 2005 through April of 2012 and the LWA recorded a lien in the amount of $1,295.53 on Plaintiffs' property. *Pletos v. Lake in the Woods Homeowners Assoc.*, No. 319087, 2015 WL 1650803, *1 (Mich. Ct. App. Apr. 14, 2015). In January of 2012, the LWA recorded a second lien on Plaintiffs' property in the amount of $6,271.74. *Id.*

In November of 2012, Plaintiffs sued the LWA in the Macomb County Circuit Court. Plaintiffs alleged fifteen counts, including violation of the LWA's Bylaws and the DECCR, violation of the FDCPA, and slander of title. *Id.* The LWA hired the Makower Defendants to pursue a counterclaim against the

Plaintiffs.  The counterclaim sought unpaid assessments, interest, late charges, and attorney fees.

The Macomb County Circuit Court granted summary disposition in the LWA's favor on both Plaintiffs' complaint and the LWA's counterclaim.  It held that the LWA followed the DECCR and the Bylaws, it did not breach its covenants with Plaintiffs, and that Plaintiffs "failed to prove the delinquent assessments [were] in error," and the LWA "had the right to file liens to pursue collection of the delinquent assessments."  *See* Mot. Summ. J., Ex. B, Pg ID 798.  It further found no violation of the FDCPA because the LWA was not a "debt collector" under the Act.  After an evidentiary hearing, the court awarded a $20,553.64 judgment against Plaintiffs, which represented unpaid assessments, late fees, interest, costs, and attorney fees.  The court further held that Plaintiffs were "obligated to pay all additional legal fees that [the LWA] reasonably incurs in attempting to collect the aforementioned sums due and owing to [the LWA]."

Plaintiffs appealed these decisions and asked the trial court to set an appeal bond and to stay the proceedings.  The Macomb County Circuit Court granted a stay conditioned on Plaintiffs posting a $25,000.00 bond within fourteen (14) days of the court's order.

The Michigan Court of Appeals affirmed the Macomb County Circuit Court's decisions in an unpublished opinion.  *Pletos v. Lake in the Woods*

*Homeowners Assoc.*, No. 319087, 2015 WL 1650803, *1 (Mich. Ct. App. Apr. 14, 2015).  Thereafter, Plaintiffs moved for leave to appeal this decision to the Michigan Supreme Court, which was denied.

Prior to the denial of leave by the Michigan Supreme Court, the LWA received a letter from Plaintiff Sandra Pletos.  Mrs. Pletos' letter requested review of certain LWA documents.  On February 5, 2016, Defendant Finkelman sent email correspondence to Plaintiffs' counsel and asked if it would be appropriate for him to respond to Plaintiffs directly on behalf of the LWA.  First Am. Compl., Ex. 13 at Pg ID 483.  Plaintiffs' counsel responded to Finkelmann's letter in relevant part:

> First of all, as an Association member, she has the right to whatever she asked for.  No attorney should be necessary for that communication.  As a result, when they calculate dues, please do not charge the Association for your fees so needlessly incurred.  Except for the 1/10 of an hour it costs to give the appropriate legal advice to hand over the documents.
>
> The Association should be communicating with Mrs. Pletos directly.  Tell them to put on their big boy pants and play the part of Association members like they are obligated to do.

*Id.* On February 12, 2016, Defendant Finkelmann sent a letter to Plaintiffs regarding Mrs. Pletos' letter requesting review of certain LWA documents.  *Id.*, Ex. 17 at Pg ID 495.

On February 25, 2016, the LWA sent Plaintiffs Invoice Number 2016-007, which stated that Plaintiffs owed the following to the LWA:

| | |
|---|---|
| 12/31/15 Account Balance: | $34,170.27 |
| 2016 General Dues: | $495.00 |
| Legal Fees 1/1/16 to 1/31/16 | $21.00 |
| Late Fees 1/1/16 to 1/31/16 | $25.00 |
| Interest 1/1/16 to 1/31/16 | $164.53 |
| Total Amount Due 2/29/16: | $34,875.80 |

On February 26, 2016, the Plaintiffs sent a letter to the LWA indicating that Invoice Number 2016-007 was invalid for a variety of reasons. *Id*., Ex. 19 at Pg ID 503. In their letter, the Plaintiffs asserted that the election of the LWA Directors was illegal, and that the Directors and Officers of the LWA have committed fraud and other purported abuses. *Id.* These complaints are identical to those addressed and resolved by the Macomb County Circuit Court and affirmed by the Michigan Court of Appeals.

Also, on February 26, 2016, Plaintiffs responded to Defendant Finkelmann's February 12, 2016 letter. Plaintiffs again raised a series of complaints concerning the identity of the Directors and Officers of the LWA, whether the Makower Defendants were authorized to act on behalf of the LWA, and the LWA's refusal to permit document inspection and financial review. *Id*., Ex. 20 Pg ID 509-10.

When the Michigan Supreme Court denied leave to appeal, the Makower Defendants sent correspondence to Plaintiffs' counsel concerning the outstanding

balance due on the state court judgment on April 1, 2016. *Id.,* Ex. 22 at Pg ID 126-

27. His letter states in relevant part:

> As you probably are aware at this point, the Supreme Court declined
> the application for leave on this matter. As a result, I believe that it
> would be appropriate for the Pletos' to pay the outstanding balance. I
> understand that the Association's records show an amount due that is
> much higher than the $25,000 bond, but we can start with the Bond
> amount in my opinion, and determine what's to be done regarding
> any subsequent amount.
> Please let me know if you will reach out to your clients regarding
> payment of the bond amount to the Association at this time. If I
> don't hear back from you in the next week, I'll contact the Bond
> Company regarding this matter. Thank you.

*Id.*

> Plaintiffs' counsel responded on April 2, 2016 stating:

> No, I was not aware as nothing has appeared at my office.
> Nevertheless, I looked it up and you are correct about the denial.

> As for the alleged amounts due and owing, please provide an itemized
> invoice of the purported charges. As you recall, the bond was 1.5
> times the amount of the judgment. Now you are saying that the
> amount allegedly exceeds the bond amount. It doesn't make sense.

*Id.* at Pg ID 126. Defendant responded to Plaintiffs' counsel on April 4, 2016

indicating that "[t]he original judgment was actually for $20,552.64 through

October 7, 2013 (see attached), so the bond was not actually for 1.5 times the

amount. I'll provide an updated ledger from my client, and will also produce the

legal slip listing for the amounts incurred by the Association since that judgment

was entered." *Id.*

On April 13, 2016, Defendant Finkelman sent Plaintiffs' counsel a letter indicating that, with judgment interest of $1,607.02, the total judgment outstanding was $22,159.66. On April 14, 2016, Defendant Finkelmann sent "a revised accounting through March 2016" to Plaintiffs' counsel, wherein he removed legal fees that were not incurred as a result of the state court litigation. *Id*. at Pg ID 134.

On April 15, 2016, Defendant Finkelman contacted CNA Surety, which issued Plaintiffs' appeal bond and informed the company that Plaintiffs had been unsuccessful on appeal and that Plaintiffs' counsel had failed to respond to him concerning receipt of the appeal bond. *Id*., Ex. 23 at Pg ID 139. He asked that CNA Surety send the bond directly to the LWA. When he did not receive a satisfactory answer, he filed a motion for judgment against CNA Surety for judgment on the bond. The Plaintiffs objected and the trial court held that "the bond was meant to satisfy the entire *Judgment* amount." *See* Mot. Summ. J., Ex E, Pg ID 820 (emphasis in original). The state court therefore granted the LWA's motion for judgment "in the amount of $24,798.03 as of September 20, 2016 . . . ." Defs.' Mot., Ex. E at Pg ID 821.

Plaintiffs filed a motion for reconsideration, which the Court denied on October 20, 2016. *Id.*, Ex. F. The state court concluded that "plaintiffs have not identified any meritorious defenses that Western Surety may have to payment on the bond. Moreover, in light of plaintiffs' continuing recalcitrance in paying any

portion of the Judgment amount, defendant was justified in approaching Western Surety." *Id.* at Pg ID 826.

Prior to the state court's entry of judgment against Western Surety, Plaintiffs filed the instant action. In addition to their FDCPA, RICO and state law claims, Plaintiffs also seek an accounting and injunctive relief ordering the Makower and LWA Defendants to "immediately cease and desist from any collection activity until the rights and responsibilities of the parties can be ascertained." First. Am. Compl., ¶ 176 at Pg ID 381.

On July 18, 2016, Defendant Finkelmann sent email correspondence to Plaintiffs concerning Mrs. Pletos' letter requesting review of certain LWA documents. *Id.*, Ex. 25 at Pg ID 537. On August 1, 2016, Plaintiffs sent a responsive letter to Defendant Finkelmann. *Id.* at Pg ID 539. While Defendant Finkelmann's July 18, 2016 letter discussed how best to effectuate the Plaintiffs review of the requested LWA documents, Plaintiffs responded that they "do not find it necessary to establish a protocol for the inspection or review of corporate documents." *Id.* They also demanded "immediate identification of the Directors, Officers, and Committee Members between 2012 and the present, verification of any alleged debt, and distribution of all records, including but limited to those items identified in our January 23, 2016 and February 26, 2016 letters to the Association and/or yourself." *Id.*, at Pg ID 540.

## III.    LAW & ANALYSIS

### A. Standards of Review

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to challenge the court's subject matter jurisdiction.  In analyzing the motion

> [t]here is no presumption that the factual allegations set forth in the complaint are true and the court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." [*United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. Cir.), *cert. denied*, 513 U.S. 868 (1994)].  The court has wide discretion to consider materials outside the pleadings in assessing the validity of its jurisdiction.  *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). The plaintiff bears the burden of demonstrating subject matter jurisdiction.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

*Ashley v. United States*, 37 F.Supp.2d 1027, 1029 (W.D. Mich. 1997).  "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Sweeton v. Brown*, 27 F.3d 1162, 1169 (6th Cir. 1994) (quoting *United States v. Siviglia*, 686 F.2d 832, 835 (10th Cir. 1981), *cert. denied*, 461 U.S. 918 (1983)).

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true."  *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims.  To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.*  (citations and quotations omitted).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009).   "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid  of 'further factual enhancement.'"  *Id*. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id*.  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully."  *Id*.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id.*

Federal Rule of Civil Procedure 56(a) empowers the court to render summary judgment forthwith "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,* 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

### B. The *Rooker Feldman* Doctrine

The Makower Defendants argue that the Court lacks jurisdiction to provide Plaintiffs with the relief they seek. The *Rooker-Feldman* doctrine bars lower federal courts from conducting appellate review of final state-court judgments because the United States Supreme Court is vested with sole jurisdiction to review

such claims.  *Exxon Mobil Corp. v. Saudi Basics Indus. Corp.,* 544 U.S. 280, 291 (2005).  When determining whether the *Rooker-Feldman* doctrine bars a plaintiff's claims, a court's inquiry focuses on "whether the source of the injury upon which plaintiff bases his federal claim is the state court judgment." *McCormick v. Braverman*, 451 F.3d 382, 394 (6th Cir. 2004).  "If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine would prevent the district court from asserting jurisdiction.  If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim."  *Id.* at 393.

Plaintiffs argue that the *Rooker-Feldman* doctrine does not bar their claims because the source of their injuries was the Makower "Defendants independent actions that constituted violations of the FDCPA and MDCPA, RICO violations, abuse of process, fraud, and criminal acts."  Plfs.' Resp. at Pg ID 1126.  However, the *McCormick* court noted that where the third parties actions "are the product of a state court judgment, then a plaintiff's challenge to those actions are in fact a challenge to the judgment itself."  *McCormick*, 451 F.3d. at 394.

Here, Plaintiffs allege that the Makower Defendants violated the FDCPA by contacting Plaintiffs' attorney and by contacting CNA Surety regarding the bond. Such actions undertaken by the Makower Defendants were the product of the state court judgment.   Moreover, contrary to Plaintiffs' arguments, Plaintiffs are

attempting to relitigate issues already decided by the state courts. Plaintiffs maintain that their Amended Complaint involves actions undertaken after their state-court complaint was filed. Yet, the issues before this Court were previously litigated by the state courts. For instance, Plaintiffs' claim that the Makower Defendants violated the FDCPA by contacting CNA Surety regarding the bond and that the post-judgment amount was incorrect. However, these issues have been addressed by the state court. As such, Plaintiffs' claims are barred by the *Rooker Feldman* doctrine.

## C. FDCPA

Even if the *Rooker Feldman* doctrine did not bar Plaintiffs' claims, their claims under the FDCPA still fail. As an initial matter, to the extent that Plaintiffs rely on communications prior to September of 2015, such communications are barred by the statute of limitations. The United States Code provides that "[a]n action to enforce any liability created by [the FDCPA] may be brought . . . within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). When a communication with a debtor allegedly violates the FDCPA, each communication is a single, discrete potential violation. *Purnell v. Arrow Fin. Servs., LLC*, 303 F. App'x 297, 303 (6th Cir. 2008). To be timely, "the violation must occur within the limitations period, not just be the later effects of an earlier time-barred violation." *Id.* at 302.

Plaintiffs allege that the Makower Defendants violated the FDCPA based on communications that were sent or received on August 29, 2012, October 26, 2012, February 19, 2015, and February 21, 2015. Plaintiffs did not file their complaint until September 2, 2016. Thus, any FDCPA claim based on communications that predate September 2, 2015 are time-barred and must be dismissed with prejudice.

Plaintiffs argue that their claims are not time-barred because Defendants fraudulent concealment equitably tolled the statute of limitations. Plaintiffs' argument is without merit. It is well settled that "circumstances which will lead to equitable tolling are rare" and it is available "only in compelling circumstances" in which "some extraordinary circumstance stood in [the plaintiff's] way." *Turner v. Lerner, Sampson & Rothfuss*, 776 F. Supp.2d 498, 504 (N.D. Ohio 2011)(internal citations omitted). Plaintiffs' Complaint fails to allege the requisite elements for equitable tolling. Plaintiffs do not allege any facts which would suggest they were prevented from discovering or exercising due diligence to discover their claims. A plaintiff is required to "prove affirmative acts of concealment." *Pinney Dock & Transp. Co. v. Penn Cent. Corp.,* 838 F.2d 1445, 1472 (6th Cir. 1988). Plaintiffs have failed to raise such allegations in their pleading. Thus, they are not entitled to rely on equitable tolling to excuse their failure to bring their FDCPA claims prior to the expiration of the statute of limitations.

Thus, the only communications that are relevant for purposes of the Makower Defendants' present motion include:

1)   The February 5, 2016 email communication from Defendant Finkelmann to Plaintiffs' counsel, which indicated that Finkelmann had received a letter from Ms. Pletos requesting a review of a variety of LWA documents and whether he had permission from Plaintiffs' counsel to contact Plaintiffs directly.  Plfs.' Resp., Ex. 13 at Pg ID 484.

2)   The February 12, 2016 letter from Defendant Finkelmann to Plaintiffs concerning Ms. Pletos' letter asking for a review of LWA documents.

3)   The April 1, 2016 email correspondence from Defendant Finkelmann to Plaintiffs' counsel asking for payment of the judgment and release of the bond to pay for the judgment.

4)   The April 4, 2016 email communication from Defendant Finkelmann to Plaintiffs' counsel concerning payment of the judgment.

5)   The April 12, 2016 email correspondence from Defendant Finkelmann to Plaintiffs' counsel concerning payment of the outstanding judgment and other fees.

6)   The April 14, 2016 email correspondence from Defendant Finkelmann to Plaintiffs' counsel concerning payment of the outstanding judgment and other fees.

7)  The April 15, 2016 demand letter from Defendant Finkelmann to CNA Surety seeking to claim the bond.

8)   The July 18, 2016 letter from Defendant Finkelmann to the Plaintiffs concerning Ms. Pletos request for inspection of documents.

However, none of these communications violated the FDCPA.  As to the communications sent on February 5, 2016, February 12, 2016 and July 18, 2016, these were not communications "in connection with collection of any debt." Defendant Finkelmann was merely responding to Mrs. Pletos' request to review LWA documents.  Indeed, Plaintiffs' counsel informed Finkelmann that Ms. Pletos was "likely seeking information unrelated to matters that have been in litigation." *See* Am. Compl., Ex. 13.

Plaintiffs assert that there are issues of fact regarding the 2016 communications.  Yet, Plaintiffs do not deny that the February 5, 2016, February 12, 2016 and July 18, 2016 communications concerned Ms. Pletos request to review LWA documents.  Plaintiffs claim that these communications also addressed verification of a debt and the identity of the creditor.  However, no such words are found in these communications.

As to the communications from Defendant Finkelmann to Plaintiffs' counsel, Plaintiffs claim that the Makower Defendants violated 15 U.S.C. § 1692c(b) by communicating with Plaintiffs' counsel without receiving prior consent directly from the Plaintiffs, or by express permission of the court.  Yet, section 1692c(b) authorizes counsel to communicate with the consumer's attorney in connection with the collection of a debt.  15 U.S.C. § 1692c(b) ("[W]ithout the prior consent of the consumer given directly to the debt collector, or the express

permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, a debt collector may not communication . . . *with any person other than the consumer, his attorney. . . .*" 15 U.S.C. § 1692c(b) (emphasis supplied).

As to the communications to CNA Surety, such communications cannot support a claim under the FDCPA based on the doctrine of collateral estoppel. To establish collateral estoppel, a party "must demonstrate that: (1) the subject matter of the second action [is] the same; (2) the parties or their privies [are] the same; and (3) the prior judgment [was] on the merits." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 488 (6th Cir. 2014). Plaintiffs' FDCPA claim against the Makower Defendants is based on Plaintiffs' assertion that Defendants had no right to contact CNA Surety to collect on the state court judgment. However, the state courts have already resolved this issue against the Plaintiffs.

Specifically, the state trial court granted the Makower Defendants' motion for judgment against CNA Surety for judgment on the bond on September 20, 2016. In so holding, the trial court concluded that "[P]laintiffs have not identified any meritorious defenses that Western Surety may have to payment of the bond. Moreover, in light of plaintiffs' continuing recalcitrance in paying any portion of the Judgment amount, *defendant was justified in approaching Western Surety*."

Pg ID 826.  Therefore, Plaintiffs likewise do not have a viable FDCPA claim based on the communications to CNA Surety.

## D. RICO

Plaintiffs likewise fail to state a viable RICO claim.  To state a RICO claim, Plaintiffs must plead the following elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006).  An enterprise is a "group of persons associated together for a common purpose of engaging in a course of conduct."  *800537 Ontario Inc. v. Auto Enterprises, Inc.*, 113 F. Supp.2d 1116, 1121 (E.D. Mich. 2000).  It is "an ongoing structure of persons associated through time, joined in purpose and organized in a manner amenable to hierarchical or consensual decision-making."  *Id*. at 1122.  A "certain amount of organizational structure" is required so as to "eliminate[] simple conspiracies from RICO's reach."  *Id*. "The hallmark of a RICO enterprise is its ability to exist apart from the pattern of wrongdoing."  *Id*. This requirement "avoid[s] the danger of guilt by association that arises because RICO does not require proof of a single agreement as in a conspiracy case . . . ."  *Id*.  RICO's aim is "criminal enterprises" rather than "individuals who associate for the commission of sporadic crime." *Id*.

Here, Plaintiffs fail to plead a viable RICO claim.  Plaintiff's allegations with respect to a RICO enterprise are woefully inadequate.  Plaintiffs attempt to

establish the existence of an enterprise by alleging the Makower and LWA Defendants are "comprised of a group of individuals associating with each other through the LWA Association." First Am. Compl., ¶ 143. Plaintiffs fail to allege the structural features of the alleged enterprise.

Additionally, Plaintiffs have not sufficiently pled a pattern of racketeering activity. To establish a "pattern of racketeering" in a federal RICO case, Plaintiffs must allege that two predicate acts "are related and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co*., 492 U.S. 229, 239 (1989). These predicate acts of racketeering may include mail fraud under 18 U.S.C. § 1341 or wire fraud under 18 U.S.C. § 1343. "Mail fraud occurs when an individual devises a plot to defraud and subsequently uses the mail in furtherance of it." *Wallace v. MidWest Financial*, 714 F.3d 414, 419 (6th Cir. 2013). Plaintiffs claim that the Defendants violated RICO by committing various FDCPA violations. However, the Court has already determined that Plaintiffs cannot state a FDCPA claim that withstands Rule 12(b)(6) scrutiny, and even if they could, a successful FDCPA claim cannot form the basis for a RICO claim. *Kevelighan v. Trott & Trott, P.C.*, 771 F. Supp.2d 763, 777 (E.D. Mich. 2010)("[T]he FDCPA, by its terms, incorporates claims that generally sound in contract . . . and cannot be the basis for a RICO claim. *Id.* at 778 n.19. Plaintiffs have likewise failed to allege a RICO claim.

### E.    Res Judicata

The LWA Defendants argue that res judicata bars Plaintiffs' claims because they have already been litigated, or could have been litigated in the state court action. This Court "must give preclusive effect to a state-court judgment as that judgment receives in the rendering state." *Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816-17 (6th Cir. 2010).  In Michigan, res judicata applies where the moving party shows "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been resolved in the first." *Adair v. State*, 470 Mich. 105, 119; 680 N.W.2d 386 (2004).

The Court is not convinced that res judicata applies to all of Plaintiffs' claims.  While the majority of Plaintiffs' claims appear to be barred by the doctrine of res judicata, it is not clear that all of the claims could have been raised during the state court litigation.  However, collateral estoppel bars Plaintiffs' FDCPA claim against the LWA Defendants because the state courts have already concluded that the LWA is not a debt collector under the FDCPA.

In order for collateral estoppel to apply, three requirements must be met. Specifically, "a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment." *McCormick*, 451 F.3d at 397.  Next, "the same parties must have a full and fair opportunity to litigate the

issue" and finally, "there must be mutuality of estoppel." *Id*. Here, Plaintiffs raised claims under the FDCPA in the state courts, as well as had a full and fair opportunity to litigate their claims. Lastly, mutuality of estoppel is present because the Plaintiffs and the LWA were parties to the proceedings before the state court and this Court and both parties are bound by the state court's judgment.

As such, Plaintiffs are collaterally estopped from arguing that the LWA is a debt collector subject to the FDCPA. Plaintiffs' FDCPA claim against the LWA is also subject to dismissal. Moreover, as previously discussed in section III.D., *supra*, Plaintiffs have failed to allege a RICO claim against any of the Defendants in the instant proceedings. Thus, even if res judicata does not preclude Plaintiffs' claims against the LWA Defendants, their claims are nonetheless subject to dismissal pursuant to collateral estoppel and/or for failure to state a claim.

### D.    State Law Claims

As to Plaintiffs' state law claims, though the Court may, under 28 U.S.C. § 1367, exercise supplemental jurisdiction over the state law claims ancillary to the relief sought, for the reasons set forth below, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

Under the standard enunciated in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966), and codified in 28 U.S.C. § 1367(c), this Court has broad discretion to exercise its supplemental jurisdiction. Even where the district court "arguably

ha[s] supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §

1367(a), the [district] court has discretion to decline to exercise its supplemental

jurisdiction." *Cirasuola v. Westrin*, No. 96-1360, 1997 U.S. App. LEXIS 2242, *3

(6th Cir. April 18, 1997).  Section 1367(c) provides that district courts may decline

to exercise supplemental jurisdiction over related state claims if:

> (1)  the claim raises a novel or complex issue of State law,
> (2)  the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3)  the district court has dismissed all claims over which it has original jurisdiction, or
> (4)  in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  The United States Supreme Court has stated that:

> Our decisions have established that pendent jurisdiction 'is a doctrine of discretion, not of plaintiff's right,' and that district courts can decline to exercise jurisdiction over pendent claims for a number of valid reasons.
>
> *                    *                    *
>
> Accordingly, we have indicated that district courts should deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine.

*City of Chicago v. International College of Surgeons*, 522 U.S. 156, 172-73 (1997)

(internal citations and quotations omitted).  In determining whether to exercise its

supplemental jurisdiction, this Court must consider judicial economy, convenience,

fairness and comity, and also avoid needless decisions of state law. *Id.* at 173; *Gibbs*, 383 U.S. at 726.

Here, the Court finds that declining supplemental jurisdiction is appropriate because all of Plaintiffs' federal claims are subject to Rule 12(b)(6) dismissal. *Id.* at 726 (concluding that if all of the federal claims are dismissed before trial, supplemental jurisdiction should be declined).       .

## IV.     CONCLUSION

For the reasons discussed above, the Makower Defendants' Motion to Dismiss [#13] is GRANTED IN PART and DENIED IN PART. The LWA Defendants' Motion for Summary Judgment [#9] is GRANTED IN PART and DENIED IN PART. Plaintiffs' federal claims are HEREBY DISMISSED WITH PREJUDICE. The Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. Plaintiff's Motion to Supplement Complaint [#39] is DENIED.

This action is DISMISSED.

SO ORDERED.

Dated:  August 30, 2017                              /s/Gershwin A. Drain
                                                     GERSHWIN A. DRAIN
                                                     United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 30, 2017, by electronic and/or ordinary mail.
/s/ Tanya Bankston
Deputy Clerk